NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DANIEL JEFFREY HAMES,**

        **Plaintiff,**

**v.**                                                **Case No. 6:16-CV-2085-ORL-37KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Daniel Jeffrey Hames, seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 10, 12, and the parties' Joint Memorandum, Doc. No. 14.[1]

## PROCEDURAL HISTORY.

In 2008, Hames filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and the Supplemental Security

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 13. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Revised Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* He alleged that he became disabled on July 1, 2008. These applications were denied initially, on reconsideration, by an Administrative Law Judge ("ALJ") and by the Appeals Council. R. 72, 102. Hames did not appeal the final decision of the Commissioner to the Court. Doc. No. 14, at 1.

In 2012, Hames filed another application for OASDI benefits in which he alleged that he became disabled on December 2, 2010. R. 177. After this application was denied originally and on reconsideration, Hames asked for a hearing before an ALJ. R. 134. An ALJ held a hearing on October 20, 2015. Hames (accompanied by a lawyer), Lori Christiansen, L.M.H.C., and a vocational expert ("VE") testified at the hearing. R. 26-70.

After considering the hearing testimony and the evidence in the record, the ALJ found that Hames was insured under OASDI through December 31, 2012. The ALJ concluded that Hames had not engaged in substantial gainful activity since the alleged disability onset date through the date he was last insured ("DLI"). R. 14.

The ALJ found that Hames had degenerative disc disease ("DDD"), which was a severe impairment. *Id.* The ALJ determined that Hames' alleged mental impairment was not severe. *Id.* The ALJ concluded that Hames did not have an impairment or combination of impairments that met or equaled an impairment listed in SSA regulations. R. 16.

The ALJ found that Hames had the residual functional capacity ("RFC") to perform light work, "except he could only occasionally climb, stoop, kneel, crouch and crawl. The claimant could frequently balance. He should avoid concentrated exposure to hazards (work at heights/driving, dangerous or moving machinery) and vibrations." *Id.* In reaching this conclusion, the ALJ gave little weight to the opinion of LMHC Christiansen, a treating professional,

and significant weight to the opinion of Efren Baltazar, M.D., a reviewing physician.  R. 17, 19. The ALJ also found that Hames' reports of his functional limitations were not entirely credible.  R. 19.

After considering the testimony of the VE, the ALJ concluded that Hames could return to his past relevant work as a retail store manager, sales attendant and office helper.  R. 21.  The ALJ concluded that each of these positions "was performed within the last 15 years, lasted long enough for the claimant to learn how to do it, and the claimant earned wages from the jobs at the substantial gainful activity level."  R. 20.  Therefore, the ALJ found that Hames was not disabled.  R. 21.

Hames requested review of the ALJ's decision by the Appeals Council.  R. 7.  On September 28, 2016, the Appeals Council found no reason to review the ALJ's decision.  R. 1-3.

Hames now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Hames having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

NOT FOR PUBLICATION

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are somewhat adequately stated in the Joint Memorandum[2] and the ALJ's decision, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts pertinent to the issues raised to protect Hames' privacy to the extent possible.

Hames was born in 1966. R. 177. He graduated from high school and took some courses at a college. R. 41. He could read and write but not well due to learning disabilities. R. 42.

From 1987 through 2005, Hames worked as a floor associate in a department store helping people find clothing on the racks. R. 45. The VE classified this job as sales attendant. R. 63. The name of the store is not in the record, and neither the ALJ nor the VE identified any earnings records that correspond to this job.[3]

From January through July 2004, Hames worked as an assistant manager at Payless Shoes. R. 43, 208. The VE classified this job as manager, retail store. R. 64. Earnings records reflect that Hames earned a total of $4,104.38 in this job. R. 193.

From December 2007 through July 2008, Hames reported that he worked at WEB Television. He described the job as running errands, answering the phone and setting up productions. He did not stay at the job long because he could not do the computer work required and he made many mistakes. R. 44. The VE classified this work as an office helper. R. 63. The earnings records show work in 2007 for WEB Television Inc. with total compensation of $2,800.00. R. 185. No earnings are reflected for 2008. *Id.*

---

[2] Contrary to the Court's Scheduling Order, counsel for the parties did not include all of the facts on which they relied in their arguments in the Statement of Facts portion of the Joint Memorandum.

[3] The VE testified that he did not address whether the jobs were substantial gainful activity ("SGA"). R. 63.

4

NOT FOR PUBLICATION

During the ALJ's hearing, Hames testified that he had an anxiety disorder that caused him to cry in public or run away. He also had anger issues. R. 48-49. During the alleged disability period, he had difficulty bending, stooping and squatting due to pain and he sometimes needed help bathing and getting dressed. R. 49-50, 59. He could cook and do household chores like sweeping. R. 50-51. He was able to drive for only 15 to 20 minutes because he had to stop due to back pain. R. 51-52. He could lift up to 35 pounds once a day and up to 20 pounds more often. R. 57-58. He estimated that he could stand 45 minutes to 1 hour before needing to change positions. He could walk 15 to 20 minutes at a very slow pace. R. 58. He worked in the garden for 1 or 2 hours, 3 or 4 times a week. R. 53. He also watched television. R. 54. He had close to 25 friends. *Id.* He also served as a companion for his elderly mother. R. 55-56. He had good days and bad days. R. 61.

*Physical Impairments*.

Medical records reveal that Hames was injured in an automobile accident on November 21, 2003. He was also injured in a slip and fall accident on December 24, 2010. R. 329. He was treated for these injuries by John A. Ortolani, M.D. R. 279-327, 329-37, 396-400, 402-06.

Imaging studies from 2010 and 2011 ordered by Dr. Ortolani and Dr. James Brown reveal disc herniation at C5-6 and C6-7, annular tears at C5-6, C6-7, L2-3, L3-4 and L4-5, right AC joint hypertrophy with impingement and rotator cuff degenerative tendinosis without full substance tear, and a calcaneal spur in a joint of the left foot. R. 266, 325-26, 377, 382-83. An MRI of the lumbar spine ordered by Dr. Youssef Guergues, which was performed on July 15, 2010, revealed mild multilevel discogenic disease and spondylosis with some stenosis at L3-4. R. 374-75.

On January 10, 2011, Hames complained to Dr. Ortolani of neck and low back pain radiating down his right leg. R. 283. Dr. Ortolani noted on examination that Hames had decreased grip strength in both hands and decreased sensation to pinprick in an L5-S1 distributional pattern in his left leg. R. 284. His impressions included cervical strain syndrome and lumbosacral strain syndrome with radiating pain. He treated Hames with Lortab, Trazadone and Flexeril, and he ordered physical therapy. R. 285.

On April 18, 2011, Dr. Ortolani noted that an EMG and nerve conduction study showed nerve damage at C6-7 on the right in the neck and L5-S1 on the right in the low back. R. 281; *see also* R. 321. Dr. Ortolani opined that Hames had a 6% impairment related to nerve damage in the neck and a 6% impairment related to nerve damage in the low back, resulting in a 12% impairment of the body as the result of a slip and fall accident in December 2010. R. 281.

On July 12, 2011 and October 10, 2011, Hames continued to report chronic neck and low back pain. Upon examination, Dr. Ortolani observed spasms in the neck and back with restriction of motion and pain. He wrote that opioid analgesics had relieved pain and improved daily physical functioning and quality of life. R. 279, 335.

Hames was treated by James J. Byrne, D.O., at least from July 24, 2012 through April 30, 2013. Dr. Byrne's treatment notes are illegible. R. 356-67.

On February 14, 2013, Dragi Bogdanovski, D.O., examined Hames at the request of the Office of Disability Determinations. Hames reported back and neck problems. He also stated that he had had suicidal ideations two years earlier, he was evaluated at a mental health clinic, and he was diagnosed with bipolar manic-depressive disorder. He had regular mental health clinic appointments, and he was stable with antidepressant medications. R. 344. Upon examination,

Dr. Bogdanovski did not observe any paravertebral muscle spasms, and straight-leg raising tests were negative for pain.  R. 345.  Hames had full range of motion in his upper and lower extremities and full grip strength.  R. 346-349.

On May 29, 2013, Dr. Baltazar opined, after review of the records, that Hames could lift up to 10 pounds frequently and 20 pounds occasionally.  He could sit, and stand/walk each for about 6 hours in an 8-hour workday.  He could occasionally climb, stoop, kneel, crouch and crawl.  R. 91-92.  He should avoid concentrated exposure to vibrations and hazards.  R. 92.

*Mental Impairments.*

During the ALJ's hearing, LMHC Christiansen testified that she treated Hames weekly in therapy from 2009 until April 2013.  R. 30, 371.  During the two-year period between December 2010 and December 31, 2012, she diagnosed Hames with major depressive disorder without psychotic features.  Based on her subsequent work experience, she would change that diagnosis to bipolar disorder with psychotic features, severe.  R. 31.  Christiansen testified that Hames had problems with memory and would lose his place when they were talking.  He had to have things written down as reminders for his next session.  He also had fatigue.  R. 32.  Christiansen also diagnosed panic disorder with agoraphobia.  At times, Hames was not able to leave home to attend his sessions with her and, instead, attended sessions by phone.  R. 33, 36.  Christensen prepared a treatment summary on May 27, 2013.  This summary also includes a diagnosis of post-traumatic stress disorder ("PTSD").  R. 369-72.  During the hearing, counsel for Hames offered to ask Christiansen to obtain her treatment notes from her previous employer, R. 29, but the ALJ did not ask for those records.

NOT FOR PUBLICATION

On February 12, 2013, J. Jeff Oatley, Ph.D., evaluated Hames at the request of the Office of Disability Determinations. Hames reported suffering from chronic back pain and severe anxiety. R. 352. Hames indicated that he was receiving counseling and medication at Coastal Mental Health Care, but that he had not been to that clinic for over a year. R. 352. Dr. Oatley observed that Hames' mood was appropriate and his energy level was normal. After psychological testing, no deficits in concentration were observed. Hames did have some weakness in new learning. R. 353-54. Dr. Oatley's diagnoses included a depressive disorder, NOS, based on Hames' reports that he had lows lasting from a day to a week and fear of crowds. R. 354.

During the hearing, the ALJ asked the VE to assume a hypothetical person of the age, education and past work history of Hames with restrictions set forth in the ALJ's RFC determination for Hames. R. 65. The VE testified that this person could perform Hames' past relevant work as a sales attendant, manager of a retail store and office helper as those jobs are defined in the *Dictionary of Occupational Titles* ("DOT"). R. 66-67.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Hames raises three assignments of error. He contends that the ALJ erred by failing to fully develop the record. He also argues that the ALJ erred at Step Four of the sequential evaluation by failing to determine whether the jobs he found Hames could perform were substantial gainful activity. Finally, he asserts that the ALJ erred in finding his reports of functional limitations to be not completely credible. He asks that the final decision of the Commissioner be reversed and that the matter be remanded for further proceedings. These are the only issues I will address.

NOT FOR PUBLICATION

*Failure to Develop the Record Fully.*

In his decision, the ALJ cited lack of treatment notes in the record as a basis for giving little weight to the opinion of LMHC Christensen and for his determination that Hames' reports of functional limitations were not completely credible. R. 17, 19. Counsel for Hames contends that these findings arose from the ALJ's failure to obtain all of the records of examinations and treatment of Hames during the period from the alleged disability onset date through the DLI.

Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. This obligation exists even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)(internal citations omitted). The SSA is also required by regulation to develop a claimant's "complete medical history for the 12–month period prior to the month you were last insured for disability insurance benefits. . . ." 20 C.F.R. § 404.1512(b)(1)(ii). Careful reading of the record supports the argument that the SSA and the ALJ did not fulfill these obligations.

Dr. James Brown ordered a number of imaging studies for Hames in 2010 and 2011. The exhibits in support of an ALJ's 2008 decision reflect that Dr. Brown's treatment notes for September and October 2010 were part of the record, but these documents are not in the record presently before the Court. It appears that Dr. Brown continued to treat Hames through the disability period at issue here based on imaging studies of Hames he ordered on about December 22, 2010, April 27, 2011, and August 19, 2011. R. 266, 377, 382.

The record also reflects that Hames was treated at and prescribed medication by professionals at Coastal Mental Health Care during the alleged disability period. R. 352. LMHC Christiansen was affiliated with that office. R. 38. She testified that she treated Hames during

the alleged disability period, and counsel for Hames offered to ask Christiansen to request her treatment notes for that period, but the ALJ did not request those records. Additionally, medication would necessarily have been prescribed at Coastal Mental Health Care by a physician, not by LMHC Christiansen, but there are no treatment records from this facility in the record before the Court.

Additionally, the record reflects that Dr. Byrne treated Hames during a portion of the alleged disability period. Although Dr. Byrne's treatment notes are in the record, they are illegible, and the ALJ did not discuss them in his decision. The illegibility of important evidentiary material can warrant a remand for clarification and supplementation to determine whether the Commissioner fully understood the medical evidence in the record. *Yamin v. Comm'r of Soc. Sec.*, No. 6:07-cv-1574-Orl-GJK, 2009 WL 799457, at * 12-13 (M.D. Fla. March 24, 2009).

Despite the ALJ's failure to fully develop the record with these treatment records, counsel for the Commissioner argues that the final decision should not be reversed absent a showing that Hames was prejudiced by the missing records.[4] The ALJ's decision establishes that the missing records were prejudicial to Hames. The ALJ made the following findings:

- "Ms. Christiansen's opinions are given very little weight even though she is a treating source because the record does not reflect any treatment notes indicating that she treated the claimant from his alleged onset date through his date last insured, which is the period relevant to this decision." R. 17.

---

[4] Counsel for the Commissioner's argument that the record could not be further developed because Hames did not consent to the SSA obtaining the missing records is wrong. Hames provided a consent form authorizing the SSA to request disclosure of "All my medical records; also education records and other information related to my ability to perform tasks." R. 341.

- "Furthermore, there are no additional notes from any other provider to support [Ms.] Christensen's testimony."  *Id.*

- "[T]he record does not reflect that the claimant has had any treatment from April 2011 through his date last insured of December 31, 2012.  If his impairments were as severe as he has alleged one would expect that he would have sought treatment and/or medication management to assist in managing his reported pain."  R. 19.[5]

When discussing whether remand should be ordered in a case of missing records, the United States Court of Appeals for the Eleventh Circuit wrote as follows:

> The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits.  We have no way of knowing whether the evidence missing from this case would sustain Brown's contentions of her inability to work.  In the absence of proof to the contrary, however, we must assume that it does lend credence to her allegations.  . . . In view of the evidentiary gaps in the record, we find that Brown was not afforded a full and fair hearing and that she was prejudiced thereby.

*Brown v. Shalala*, 44 F.3d 931, 936 (11th Cir. 1995).

I recommend that the Court find the rationale in *Brown* to be applicable here.  The ALJ relied extensively on the absence of medical records to support his decision.  As the Eleventh Circuit wrote, there is no way of knowing whether the missing records would provide support for Hames' assertion that he is disabled.  Therefore, reversal of the final decision of the Commissioner and remand for full development of the record is appropriate.

---

[5] In the Joint Memorandum, counsel for the Commissioner concedes that this finding is incorrect.  Doc. No. 14, at 27.

NOT FOR PUBLICATION

*Past Relevant Work.*

The ALJ found that Hames could perform his past relevant work as the manager of a retail store, sales attendant and office helper. Counsel for Hames contends that this finding is erroneous because none of these jobs was performed at substantial gainful activity levels.

Regulations define "past relevant work" as work that a claimant has done within the past 15 years, that was substantial gainful activity and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). "Whether work constitutes substantial gainful activity is determined through the claimant's earnings." *Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 421 (11th Cir. 2015)(internal citation omitted).[6] Regulations establish earnings guidelines for determining whether work was substantial gainful activity. 20 C.F.R. § 404.1574(b).

The record indicates that Hames performed the job of assistant manager at Payless Shoes from January through July in 2004. Earnings records show that he earned $4,104.38 in this job. For 2004, the monthly substantial gainful activity amount was $810. Social Security, *Substantial Gainful Activity*, https://www.ssa.gov/oact/cola/sga.html (last visited Feb. 6, 2018). Dividing the amount Hames earned, $4,104.28, by the number of months he worked, 7, results in average monthly earnings of $586.34, which is below the presumptive amount for substantial gainful activity.

The record indicates that Hames performed the job of sales attendant from 1987 through 2005, some of which time was more than 15 years before the date of the ALJ's decision. The ALJ did not identify, and I have not found, any earnings records for this job.[7] Therefore, the record is

---

[6] Unpublished decisions of the Eleventh Circuit are cited as persuasive authority.
[7] Counsel for the Commissioner argues that there are several years between 1987 and 2005 when Hames' earnings were at substantial gainful activity levels. Counsel does not, however, identify which of those jobs were the job of

insufficiently developed to support a finding that this job was performed at substantial gainful activity levels.

The record indicates that Hames performed the job the VE classified as an office helper with WEB Television from December 2007 through July 2008. The only earnings record for this employer shows earnings of $2,800 for the year 2007. If, in fact, Hames earned this much for one month in 2007, his earnings would be above the $1,500 per month earnings that are presumptive evidence of substantial gainful activity under the SSA guidelines. Social Security, *Substantial Gainful Activity*, htttps://www.ssa.gov/oact/cola/sga.html (last visited Feb. 6, 2018). Alternatively, Hames testified that he worked 8 hours a day, 5 days a week at the rate of $10 per hour. Assuming 20 days of work in December 2007 (4 full weeks x 5 days a week) multiplied by 8 hours a day would total 160 hours of work, which at $10.00 per hour would equal $1,600. This would also be presumptively substantial gainful activity under the SSA guidelines.

Therefore, one of the jobs the ALJ identified at Step Four of the sequential evaluation may have been performed at substantial gainful activity levels. Nevertheless, because I recommend that the case be remanded for further development of the medical records, it would be appropriate on remand to require the Commissioner to provide an analysis to establish which, if any, of Hames' past relevant work was performed at substantial gainful activity levels.

*Credibility*.

If an ALJ decides not to credit a claimant's testimony as to pain and other subjective symptoms, he must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). In the last assignment of error, Hames contends that the ALJ erred

---

"sales attendant" identified by the VE.

NOT FOR PUBLICATION

in finding that his statements regarding his functional limitations were not completely credible because that finding was not supported by adequate reasons based on record evidence.

The ALJ's template finding that "the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained this this decision" is insufficient to point the Court to the particular findings that the ALJ relied on to support his credibility decision.  *McKinney v. Astrue*, No. 8:08-cv-2318-T-TGW, 2010 WL 149826, at * (M.D. Fla. Jan. 15, 2010)("In the absence of a cogent discussion of the credibility determination, the statement is too general to permit meaningful judicial review.")(citing *Marbury v. Sullivan*, 957 F.2d 837, 840 n.2 (11th Cir. 1992)).   Accordingly, I address only the two findings stated in the paragraph immediately following this template statement:   (1) that Hames had very little and conservative treatment from the alleged onset date through the DLI; and (2) the record does not reflect that the claimant has had any treatment from April 2011 through the DLI.   R. 19.

The first finding that Hames received very little treatment from the alleged onset date through the DLI is undermined by the failure to fully develop the record, as discussed above. Without complete treatment notes, the record cannot support a finding that Hames received very little treatment during the disability period at issue.   Moreover, the treatment notes that are in the record reflect that Hames was treated with opioid medication, which is not necessarily "conservative" treatment.  *See, e.g., Wheelock v. Comm'r of Soc. Sec.*, No. 6:16-cv-860-Orl-37KRS, 2017 WL 3267800, at *5 (M.D. Fla. June 28, 2017), *report and recommendation adopted,* No. 6:16-cv-860-Orl-37KRS, 2017 WL 3251567 (M.D. Fla. July 31, 2017)(and cases cited therein).

NOT FOR PUBLICATION

in finding that his statements regarding his functional limitations were not completely credible because that finding was not supported by adequate reasons based on record evidence.

The ALJ's template finding that "the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained this this decision" is insufficient to point the Court to the particular findings that the ALJ relied on to support his credibility decision.  *McKinney v. Astrue*, No. 8:08-cv-2318-T-TGW, 2010 WL 149826, at * (M.D. Fla. Jan. 15, 2010)("In the absence of a cogent discussion of the credibility determination, the statement is too general to permit meaningful judicial review.")(citing *Marbury v. Sullivan*, 957 F.2d 837, 840 n.2 (11th Cir. 1992)).   Accordingly, I address only the two findings stated in the paragraph immediately following this template statement:   (1) that Hames had very little and conservative treatment from the alleged onset date through the DLI; and (2) the record does not reflect that the claimant has had any treatment from April 2011 through the DLI.   R. 19.

The first finding that Hames received very little treatment from the alleged onset date through the DLI is undermined by the failure to fully develop the record, as discussed above. Without complete treatment notes, the record cannot support a finding that Hames received very little treatment during the disability period at issue.   Moreover, the treatment notes that are in the record reflect that Hames was treated with opioid medication, which is not necessarily "conservative" treatment.  *See, e.g., Wheelock v. Comm'r of Soc. Sec.*, No. 6:16-cv-860-Orl-37KRS, 2017 WL 3267800, at *5 (M.D. Fla. June 28, 2017), *report and recommendation adopted,* No. 6:16-cv-860-Orl-37KRS, 2017 WL 3251567 (M.D. Fla. July 31, 2017)(and cases cited therein).

As to the second factor, counsel for the Commissioner correctly concedes that the finding that Hames was not treated after April 2011 is not supported by the evidence. Doc. No. 14, at 27. The medical records in the file show treatment, imaging studies and examinations between April 2011 and the DLI. *See, e.g., id.* (citing R. 266, 279, 379).

Because the ALJ did not state explicit and adequate reasons supported by substantial evidence in the record in connection with his credibility finding, the third assignment of error is meritorious.

## RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** and that the case be **REMANDED** for further proceedings. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**RESPECTFULLY RECOMMENDED** this 8th day of February 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE